Arthur A. COIA,

v.

Lynda STEPHANO et al.

No. 83–501–C.A.

Supreme Court of Rhode Island.

July 7, 1986.

Richard A. Skolnik, Lipsey & Skolnik, Providence, for plaintiff.

Arthur M. Read, 2nd, Gorham & Gorham, Richard E. Simms, Joseph DeAngelis, Licht & Semonoff, Providence, for defendants.

## OPINION

SHEA, Justice.

This case is before the court on appeal from the granting of defendants' motion to dismiss. The plaintiff Arthur Coia (hereinafter Coia) filed a complaint on June 22, 1983, in which he alleged that defendants Lynda and George Stephano had sold him several dogs that were unfit, sick, and inconsistent with sellers' warranties. He also alleged that defendants John and Judy Wherle had agreed to sell him certain dogs that they subsequently refused to transfer to him.[1] These defendants each filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Superior Court Rules of Civil Procedure. Finding insufficient minimum contacts, the trial justice dismissed the claim without prejudice. We affirm.

The issues presented on appeal are (1) whether the trial justice erred in deciding that defendants did not maintain, at the time this claim arose, the requisite minimum contact with the State of Rhode Island to allow the Superior Court to exercise personal jurisdiction over them consistent with the requirements of the due-process clause of the Fourteenth Amendment and G.L. 1956 (1969 Reenactment) § 9–5–33[2] and (2) whether the trial justice erred in refusing to permit plaintiff to engage in jurisdictional fact discovery.[3]

---

1. Coia sought specific performance with respect to the agreement with the Wherles to transfer the dogs and punitive and compensatory damages from each of the defendants. Coia also sought an order enjoining defendant American Kennel Club from allowing the transfer or registration of the Wherle dogs to any other purchaser. The American Kennel Club argued in its answer that it does not maintain sufficient minimum contacts to be subjected to suit in this jurisdiction.

2. General Laws 1956 (1969 Reenactment) § 9–5–33 provides in pertinent part:
   "[E]very individual not a resident of this state * * * that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold * * * such nonresident individuals * * * amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States."

3. Coia also argues that by submitting affidavits in support of their motions to dismiss, defendants' motions were "automatically transformed into one[s] for summary judgment under rule 56" and in support of this proposition he cites the case of *Ewing v. Frank*, 103 R.I. 96, 97–98, 234 A.2d 840, 841, (1967). This court in *Ben's Marine Sales v. Sleek Craft Boats*, 502 A.2d 808

It is indisputable that a state court may exercise personal jurisdiction over any individual as long as there exist sufficient "minimum contacts" between the defendant and the forum state. *Roger Williams General Hospital v. Fall River Trust Co.*, 423 A.2d 1384 (R.I.1981). *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). We have recognized the well settled proposition that

> "[a] defendant's contacts with the forum state must be such that the exercise of personal jurisdiction does not 'offend "traditional notions of fair play and substantial justice."' *Id.* at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. Absent these 'minimum contacts,' the due process clause of the Fourteenth Amendment prohibits a state court from rendering a valid personal judgment against the defendant. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). As noted in *McGee*, the requirement of minimum contacts performs two important functions: it protects defendants from the inconvenience of litigating in distant forums, and it acts to ensure that states do not reach beyond the limits imposed on them by their status as equal sovereigns in the federal system." *Roger Williams General Hospital*, 423 A.2d at 1386.

The determination of whether sufficient minimum contacts are present to satisfy the requirements of due process must be decided on a case-by-case basis. *Id.*

In this case it does not appear that the controverted facts could constitute the necessary "minimum contacts" even if all of the allegations alleged by Coia were found to be true. Coia has asserted by way of the pleadings, affidavit, and oral argument both to the trial justice and to this court that defendants had sufficient minimum contacts. The alleged contacts consisted of the participation by defendants in Rhode Island dog shows; the placement of their names in the *Colonial Rottweiler Club* newsletter, which had limited circulation in Rhode Island; and the fact that in the same newsletter they were listed in the breeders' directory. Coia, however, does not explain specifically what connection these contacts had with his purchase of the Rottweilers which occurred in New York.[4] Moreover, the only connection that the Wherles had with Coia were telephone conversations that Coia or his wife initiated. It is well established that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Ben's Marine Sales v. Sleek Craft Boats*, 502 A.2d 808, 810 (R.I.1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283, 1298 (1958)).

Coia only suggests that these contacts led him to become aware of defendants' kennels in New Jersey and in New York State. None of the above activities, taken individually or collectively, is sufficient to establish minimum contacts with Rhode Island under the facts of this case. Furthermore, the record supports the trial justice's findings that

> "[t]he defendants are not residents of Rhode Island; they have not conducted business within the State of Rhode Island; the contract for sale and delivery of the dogs was completed in the jurisdiction of New York; the defendants never *formally* advertised in Rhode Island, they have no place of business, post office box, telephone office, or any agents or representatives who are employed

---

(R.I.1985), overruled *Ewing* insofar as it stands for the proposition that when extraneous matters are considered in ruling on a motion to dismiss based on a lack of jurisdiction the motion is automatically transformed into one for summary judgment. In *Ben's Marine* we determined that "[t]his observation is erroneous." *Id.* at 810 n. 1.

**4.** This court in *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 408–09, 252 A.2d 184, 190 (1969), acknowledged that whereas the question of "whether or not the litigation arose out of activities which were related to the forum state" may not be a conclusive determinant, it still is "both relevant and significant."

within this jurisdiction. Certainly, these facts do not constitute the necessary 'minimum contacts.' " (Emphasis added.)

The participation in a Rhode Island dog show is not the type of contact that establishes that defendants "purposefully [availed themselves] of the privilege of conducting activities within the state, thereby invoking the benefits and protections of the laws of Rhode Island, together with the concomitant obligation[,]" *Roger Williams General Hospital*, 423 A.2d at 1387, which is elemental to an exercise of personal jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The act of showing a dog does not appear to be connected with any business purpose except, arguably, insofar as a show dog gains notoriety, its litter may increase in value or it may attract interested buyers. The alleged participation in a Rhode Island dog show has no connection to the underlying facts of this case or to the sale of the dogs in question or to any other sale. Furthermore, defendants state in their affidavit that they never appeared in any Rhode Island dog shows, and one defendant specifically stated that she shows dogs only for personal enjoyment.

Coia also asserts that some of defendants engaged in advertising by listing themselves in the "Breeders' Directory" of the *Colonial Rottweiler Club* newsletter. This court in *Roger Williams General Hospital*, addressed the issue of whether advertising may be a sufficient minimum contact to support personal jurisdiction. In *Roger Williams General Hospital* this court found that certain types of advertising are an important contact that, depending on the extent and nature of the other contacts, may be sufficient to give rise to personal jurisdiction. In that case, although personal jurisdiction was not established, we found that defendant's television advertisement "clearly demonstrated that the [defendant] intended to solicit the business of Rhode Island residents" and that "the fact that such advertising ceased some four months prior to the hiring of [defendant] was sufficient to terminate the contacts between Rhode Island and the [defendant]."[5] 423 A.2d at 1387.

In this case the alleged advertisement does not rise to the same level of importance. In *Roger Williams General Hospital* the defendant advertised for the intended, calculated purpose of soliciting Rhode Island business. Here, the breeders' directory does not have a specific circulation in Rhode Island, nor is it calculated to solicit Rhode Island business. In fact the breeders directory does not have an established circulation schedule and is distributed only to club members, and membership in the club is not open to the general public. To become a member, a person must be endorsed by a present member and a code of ethics must be subscribed to. The breeders' directory may be more properly characterized as an informational resource rather than a solicitation. Unlike the situation in *Roger Williams General Hospital*, participation in this publication does not "clearly demonstrate that the [defendant] intended to solicit the business of Rhode Island residents." *Id.*

■ At oral argument before this court Coia relied heavily on the case of *Smith v. Johns-Manville Corp.*, 489 A.2d 336 (R.I. 1985), to support his assertion that it was error not to allow jurisdictional fact discovery. The facts in the *Smith* case are wholly distinguishable from those in the present case. In *Smith* there was "significant controversy surrounding the pertinent facts bearing on the question of minimum contacts." *Id.* at 339. There the plaintiff alleged in her complaint that defendant was directly or indirectly responsible for the asbestos product that allegedly killed the decedent. The defendant's affidavit did "nothing to rebut the allegation of indirect responsibility." *Id.* Furthermore, one

5. In *Roger Williams General Hospital v. Fall River Trust Co.*, 423 A.2d 1384 (R.I.1981), the defendant bank also had Rhode Island customers, advertised in the area's telephone books, and administered Rhode Island real estate.

of the plaintiff's counsel stated in an affidavit that the defendants' product was known to be distributed in Rhode Island through another company. The court noted in *Smith* that many questions remained unanswered and that great controversy surrounded the question of minimum contacts. Further, we held that if the plaintiff was denied jurisdictional fact discovery, it would result in substantial prejudice to the plaintiff. This was so because if plaintiff's claim was dismissed, she could not bring another action in another jurisdiction, the statute of limitations having run.

In this case the facts are very different. There is not a "great deal of controversy surrounding the question of minimum contacts" in this case. Here, Coia made general allegations that even if true are not adequate to support a finding of personal jurisdiction. The advertising alleged to have been done by defendants was not calculated to solicit Rhode Island business. The alleged participation in a Rhode Island dog show is also insufficient, either individually or coupled with the other contacts. Furthermore, unlike the situation in *Smith* defendants in this case not only denied the general allegations made by Coia but also refuted in counteraffidavits each allegation specifically, to which Coia did not respond. Moreover, the limitation period has not run on Coia's cause of action, so he still has time to bring the action in an appropriate jurisdiction. The dismissal of his case therefore would not result in substantial prejudice.

We noted in *Smith* that the court would not grant the plaintiff a license to engage in a "fishing expedition." In this case there is an absence of any specific allegations that would support a finding of personal jurisdiction. We would be issuing a fishing license to the plaintiff if we allowed jurisdictional fact discovery on this record.

For these reasons the plaintiff's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.